IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHRISTIAN HEYNE, et al.            )
                                   )
v.                                 ) NO. 3:09-0847
                                   ) JUDGE CAMPBELL
METROPOLITAN NASHVILLE             )
PUBLIC SCHOOLS, et al.             )

MEMORANDUM

Pending before the Court are a Motion to Dismiss Individual Defendants (Docket No. 5), Defendants' Motion to Stay Discovery (Docket No. 7), a Motion to Dismiss Metropolitan Board of Public Education (Docket No. 8), and a Motion to Dismiss the Metropolitan Government (Docket No. 10).

For the reasons stated herein, the Motion to Dismiss Individual Defendants (Docket No. 5) is GRANTED in part and DENIED in part; Defendants' Motion to Stay Discovery (Docket No. 7) is DENIED; the Motion to Dismiss Metropolitan Board of Public Education (Docket No. 8) is GRANTED; and the Motion to Dismiss the Metropolitan Government (Docket No. 10) is GRANTED in part and DENIED in part.

FACTS

Plaintiffs' Amended Complaint alleges that on September 5, 2008, Christian Heyne was a student and football player at Hillsboro High School in Nashville, Tennessee. Plaintiffs assert that after practice on that day, a group of football players had congregated in a narrow parking lot behind the locker room, and no school officials or employees were supervising the students. Plaintiffs contend that Christian Heyne got into his car and started moving slowing toward the exit of the parking lot. Plaintiffs aver that, either because Christian misjudged the clearance available or

because another student (known here as "D.A.") shifted his foot forward at the last instant, the left front tire of Christian's car made contact with D.A.'s foot.

Plaintiffs maintain that the impact to D.A.'s foot resulted in no serious harm, although D.A. "got tripped up" and fell backward. Plaintiffs claim that, as soon as he realized what had happened, Christian backed up, jumped out of his car, apologized and attempted to make sure D.A. was not hurt. Plaintiffs assert that, in response, D.A. threatened to kill Christian.[1]

This action arises from the investigation and disciplinary actions taken against Christian as a result of this incident. Plaintiffs allege that Defendants' investigation of the incident was incomplete and incompetent. Plaintiffs maintain that Defendants first charged Christian with reckless endangerment and suspended him for two days. Plaintiffs argue that, two days later, Defendants charged Christian with two additional offenses, using an object in an assaultive manner and cruelty to a student, and increased his suspension to ten days.[2] The matter was referred for a formal disciplinary hearing before a Disciplinary Hearing Panel.

Plaintiffs aver that the proceeding before the Panel, which came after Christian had served his suspension, was merely a sham, where, among other things, Christian was not allowed to present witnesses on his own behalf, Christian's attorney was not allowed to participate other than passing notes to Christian and his parents, and Defendant Perry improperly intervened in and influenced the

---

[1] Plaintiffs contend that no investigation or disciplinary action was ever taken against D.A. as a result of this threat.

[2] Plaintiffs assert that a suspension of ten days is included in a student's permanent school record and must be reported to colleges, universities and military service academies during the application process. Plaintiffs also allege that Christian Heyne had been approached about playing collegiate football on scholarship and had received a congressional appointment from Representative Jim Cooper for application to one of the U.S. military academies, but he has been unable to apply for any of these college opportunities because of Defendants' actions.

2

deliberations. Plaintiffs also claim that several Metropolitan Government ("Metro") school employees who had planned to attend the hearing to testify on Christian's behalf were told by Defendant Manuel that they would lose their jobs if they attended the hearing. Plaintiffs argue that the actions of the Defendants denied Christian any chance of a fair and impartial hearing.

The Disciplinary Panel declined to exonerate Christian and sustained the charge of reckless endangerment.[3] Plaintiffs maintain that to find him guilty of reckless endangerment, the Panel would have had to find that Christian acted with conscious disregard for the safety of a fellow student or intentionally engaged in conduct which he knew would put that student at risk of serious bodily injury. Plaintiffs assert that the Panel was never instructed as to the elements or proper definition of reckless endangerment and its findings do not support the charge. Specifically, Plaintiffs aver that the Panel stated on the record that Christian did not intend to hit D.A. and did not intend any act of cruelty toward a student. Plaintiffs also argue that the written findings of the Panel, drafted by Defendant Perry after the fact, do not accurately reflect the findings of the Panel on the record at the hearing.

Plaintiffs appealed the decision of the Disciplinary Panel. Defendant Henson, Interim Director of Schools, assigned Defendant Chambers to hear the appeal. Plaintiffs contend that the assignment of Defendant Chambers was improper because she had been actively involved in prosecuting Christian from the beginning and was, therefore, not independent or impartial. Plaintiffs assert that Defendant Chambers improperly refused to consider evidence and improperly consulted with and deferred to school officials, including Defendant Manuel, in order to "support the

---

[3] Although, according to Plaintiffs, the Panel dismissed the two additional charges of using an object in an assaultive manner and cruelty to a student, the Panel did not reduce the amount of time of the suspension for purposes of Christian's record.

principal." Defendant Chambers affirmed the decision of the Panel, and the Metro School Board denied Christian's request for a hearing.

Plaintiffs contend that Defendants' actions were racially motivated, as Defendant Manuel had, prior to this incident, instructed the staff at the school to "be more lenient in enforcing the school's Code of Conduct against African-American students because there were too many African-Americans students serving in-school suspension." Plaintiffs allege violations of Christian's procedural and substantive due process rights and his constitutional right to equal protection. Plaintiffs also allege that Defendants' actions were taken in accordance with a municipal policy or custom concerning student discipline and that Metro failed adequately to train its employees. Plaintiffs claim that Defendants conspired to deny Christian's constitutional rights, resulting in injury to Christian. Finally, Plaintiffs contend that Defendants were negligent in the investigation and administration of their duties with regard to this matter, proximately causing harm to the Plaintiffs.

Plaintiffs do not contest the Motion to Dismiss of the Metropolitan Board of Public Education and the Metropolitan Nashville Public Schools (*see* Docket No. 15), and all claims against these Defendants, therefore, are DISMISSED.

Plaintiffs also do not contest that the "official capacity" claims against the individual Defendants are duplicative of the claims against Defendant Metro (*see* Docket No. 15). Therefore, all claims against the individual Defendants in their official capacities are DISMISSED.

Finally, Plaintiffs do not contest dismissal of any negligence claims against Defendant Metro (*see* Docket No. 15), and those claims are also DISMISSED.

4

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950.

## STANDING

Defendants first contend that William and Robin Heyne have no standing to bring a constitutional claim against Defendants, because neither William nor Robin Heyne alleges unconstitutional conduct *as to them*. In the Sixth Circuit, a Section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). Accordingly, only the purported victim (or his estate's representative) may prosecute a Section 1983 claim. *Id.*[4]

Accordingly, all Section 1983 claims asserted by Plaintiffs William and Robin Heyne are DISMISSED. The negligence claims asserted by these two Plaintiffs are addressed below.

---

[4] The case cited by Plaintiffs in response to this argument, *Clark v. Lutcher*, 436 F.Supp.1266 (M. D. Pa. 1977), is distinguishable, since the child in that case was a minor. Christian Heyne is no longer a minor and can fully represent himself herein.

5

SECTION 1983

To prove a Section 1983 claim, a plaintiff must establish that: (1) he was deprived of a right secured by the United States Constitution or laws; and (2) the deprivation was caused by a person acting under color of state law. *Spurlock v. Whitley*, 971 F.Supp. 1166, 1175 (M.D. Tenn. 1997).

Plaintiff Christian Heyne alleges that Defendants, acting under color of law, violated his constitutional rights to procedural due process, substantive due process and equal protection. For purposes of this Motion, Defendants do not contest that they were acting, at all pertinent times herein, under color of law. Defendants argue that they did not violate any clearly established constitutional rights of Christian Heyne, that the individual Defendants are entitled to qualified immunity, and that Defendant Metro cannot be liable because Plaintiff has cited no policy, custom or practice which directly led to the alleged harm.

A. Qualified Immunity

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). Although the defendant bears the burden of pleading this defense, the plaintiff must show that the defendant is not entitled to qualified immunity. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999).

In *Saucier v. Katz*, 121 S.Ct. 2151 (2001), the Supreme Court held that, in resolving qualified immunity claims, the Court must first decide whether the facts alleged make out a violation of a constitutional right and then, if they do, decide whether the right was clearly established at the time of the alleged misconduct. In *Pearson*, the Court held that, although the sequence of decision in

6

*Saucier* is appropriate and often beneficial, it should no longer be regarded as mandatory. *Pearson*, 129 S.Ct. at 818. "The judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

The Individual Defendants assert that they are entitled to qualified immunity from Plaintiff's constitutional claims. The Court notes that Plaintiffs' Amended Complaint alleges that the Defendants "conspired among themselves and with others unnamed in the Metro system to knowingly and intentionally deny Christian's constitutional rights." Docket No. 12, ¶ 44.

B. Procedural Due Process

In *Goss v. Lopez*, 95 S.Ct. 729 (1975), the Supreme Court held that students facing ten-day suspensions from public school are entitled to protection under the Due Process Clause. *Id.* at 737. The Court further held that such protection requires schools to provide notice of the charges against the student, an explanation of the evidence the authorities have, and an opportunity for the student to present his or her side of the story. *Id.*; *see also Laney v. Farley*, 501 F.3d 577, 581 (6th Cir. 2007). The Court held that the Due Process Clause applied because suspensions from school deprived students of two rights: a property interest in educational benefits and a liberty interest in their reputations. *Id.* Such students are also entitled to an impartial decision-maker. *Newsome v. Batavia Local School Dist.*, 842 F.2d 920, 927 (6th Cir. 1988).

The allegations of Plaintiffs' Amended Complaint, as described above, set forth sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face that Defendants violated Christian's right to an impartial decision-maker. For example, the Amended Complaint includes an allegation that Defendants were racially motivated to increase Christian's

7

punishment based on demographic information indicating "too many African-Americans students serving in-school suspension." In addition, the Amended Complaint alleges that Defendant Manuel threatened certain witnesses who planned to testify in Christian's behalf. The Amended Complaint also alleges that Defendant Manuel admitted that he took the disciplinary action against Christian to "cover" himself and the school.

In addition to the conspiracy allegations, the Amended Complaint alleges that Defendant Perry, Discipline Coordinator for the Metro schools, directed that Christian be wrongfully charged with one, then three disciplinary infractions; refused to let counsel speak or Christian present witnesses at the hearing; improperly intervened and influenced the Disciplinary Panel; failed to provide the Panel with the proper definition and elements of Christian's alleged infraction; and made written findings of fact contrary to the Panel's decisions.

The Amended Complaint alleges that Defendant Chambers, an employee of the Disciplinary Office for Metro schools, conspired with the other Defendants and ignored evidence and improperly consulted with the prosecuting officials in deciding Christian's appeal, also deferring to those officials to support the principal and the school.

The Amended Complaint alleges that Defendant Jones, as Director of Attendance and Discipline for Metro schools, also directed, or in concert with others imposed, the charges and suspension against Christian.

The Amended Complaint alleges that Defendant Henson, as Interim Director of Schools, conspired with the other Defendants and inappropriately appointed Defendant Chambers to hear Christian's appeal, despite the fact that she was biased.

8

Finally, the Amended Complaint alleges that Defendant Thompson, Assistant Superintendent for Student Services, conspired with the other Defendants and improperly consulted with and influenced Defendant Chambers in her appeal decision.

Throughout the Amended Complaint, Plaintiffs assert that the Defendants worked together in their wrongful actions against Christian. As indicated above, Plaintiffs also allege that Defendants "conspired" to knowingly and intentionally violate Christian's constitutional rights.

The Court must accept the allegations of the Amended Complaint as true. Further discovery may reveal undisputed facts that indicate otherwise; but for purposes of a motion to dismiss, these allegations, if true, establish a violation of Christian's clearly established constitutional right to due process before the deprivation of his property interest in public education and his liberty interest in his personal reputation. Therefore, Defendants' Motion to Dismiss the procedural due process claims as to the individual Defendants is DENIED.

C. Substantive Due Process

"Substantive due process" generally reflects the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). An action of state or local government which "shocks the conscience" of the federal court may violate substantive due process. *Id.* at 1217. "Arbitrary" or "capricious" action by the government may also constitute the violation of a substantive due process right. *Id.*; *Vandergrift v. City of Chattanooga*, 44 F.Supp.2d 927, 938 (E.D. Tenn. 1998).

9

In the context of school discipline,[5] a substantive due process claim will succeed only in the "rare case" when there is "no rational relationship between the punishment and the offense." *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000). Here, the Court finds that the alleged actions of Defendants do not rise to the level of "shocking the conscience." In addition, Plaintiffs have not sufficiently alleged that the punishment meted out in this instance, ten days' suspension, had no rational relationship to the offense. The alleged actions were neither sufficiently arbitrary nor sufficiently capricious to constitute a substantive due process violation.

Therefore, Defendants' Motions to Dismiss are GRANTED as to Plaintiff's substantive due process claims, and those claims against all Defendants are DISMISSED.

D. Equal Protection

The Equal Protection Clause commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. U.S. Const., amend. XIV, § 1. To state a claim under the Equal Protection Clause, a plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class. *Davenport v. Simmons*, 192 F.Supp.2d 812, 821 (W.D. Tenn. 2001); *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. *Davenport*, 192 F.Supp. 2d at 821.

Plaintiffs' Amended Complaint alleges that Christian Heyne was intentionally discriminated against because of his race, in that Defendants had been instructed to "be more lenient in enforcing

---

[5] Education is not a "fundamental right." *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973).

10

the school's Code of Conduct against African-American students because there were too many African-Americans students serving in-school suspension." Plaintiffs contend that the disciplinary action taken against Christian was escalated to give the appearance of being sufficiently strict with white students and to improperly placate real or anticipated claims of racial bias by parents of minority students.

At the time of Christian's punishment, reasonable school officials should have known that punishing a student based upon his race would be a violation of the student's equal protection rights. If true, Plaintiffs' allegations state a plausible equal protection claim, and Defendants' Motions to Dismiss this claim is DENIED.

E. Municipal Liability

Liability may be assessed against a municipal defendant under Section 1983 only for constitutional violations that were caused by a policy of the municipality. *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Liability may also attach if the constitutional tort occurs because of a governmental custom which, though not formally approved as a policy, is nonetheless an established usage or course of conduct. Id. at 690-91. Regardless of how the policy arises, the plaintiff must show: (1) a municipal policy exists, and (2) the policy was the moving force behind the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Plaintiffs allege a Metro custom, policy or practice of improperly using race as a factor in disciplining students. Plaintiffs offer factual support for this contention in their allegation concerning Defendant Manuel's instruction to the staff and the allegation of conspiracy to give the

11

appearance of being sufficiently strict with white students and to improperly placate real or anticipated claims of racial bias by parents of minority students.

Plaintiffs also allege that Defendant Metro is liable for failure to adequately train its employees. The allegations of conspiracy and improper custom, policy or practice, however, do not include factual support for failure to train. Accordingly, the failure to train claim against Metro is dismissed.

For purposes of a Motion to Dismiss, Plaintiffs have sufficiently alleged a plausible claim against Defendant Metro for violation of Christian Heyne's procedural due process and equal protection rights. Defendant Metro's Motion to Dismiss is GRANTED as to the failure to train claim and DENIED as to Plaintiff's procedural due process and equal protection claims.

## NEGLIGENCE

Plaintiffs also assert state law negligence claims against all Defendants. Because Plaintiffs allege that the Defendants intentionally violated Christian's constitutional rights and mere negligence is not enough to constitute a Section 1983 claim, Plaintiffs' negligence claims must be alternative claims. Under Fed. R. Civ. P. 8(d), a plaintiff may plead in the alternative, even if the pleadings are inconsistent. *CSX Transportation, Inc. v. General Electric Co.*, 2009 WL 3254879 at * 6 (W.D. Ky. Oct. 8, 2009).

The Tennessee Governmental Tort Liability Act ("TGTLA") provides that governmental entities are not immune from suit for injury proximately caused by a negligent act of omission of any employee within the scope of his employment except if the injury arises out of civil rights.[6]

---

[6] "Civil rights" has been construed to include claims arising under the federal civil rights laws and the U.S. Constitution. *Spears v. Cooper*, 2009 WL 838179 at * 31 (E.D. Tenn. March 31, 2009).

12

Tenn. Code Ann. § 29-20-205(b). Plaintiffs agree that the negligence claims against Defendant Metro should be dismissed because, under the TGTLA, Metro is immune from such claims.

Under the TGTLA, if the governmental entity is not amenable to suit - - in other words, if immunity has not been removed by § 29-20-205(b) - - then employees of the entity are proper party Defendants.[7] Tenn. Code Ann. § 29-20-310(c); *Spears v. Cooper*, 2009 WL 838179 at * 31 (E.D. Tenn. March 31, 2009).

Here, Plaintiffs allege that the individual Defendants were negligent "in the investigation, consideration and administration of their duties, including the duty to supervise students present on campus for after school activities, and the investigation and consideration of the events that followed the accident which led to the disciplining of Christian Heyne." Amended Complaint (Docket No. 1-1), ¶ 64. The Court finds that the Amended Complaint sufficiently sets forth an alternative cause of action for negligence against the individual Defendants for which the TGTLA does not provide immunity.

However, the Tennessee legislature has expressed a clear preference that TGTLA claims be handled by its own state courts. *Spears*, 2009 WL 838179 at * 31 (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000)). This unequivocal preference of the state legislature is an exceptional circumstance under 28 U.S.C. § 1367(c) for declining supplemental jurisdiction. Although the Court retains discretion to exercise supplemental jurisdiction over these claims against the individual Defendants, the Court also has discretion not to hear those claims. *Spears* at * 31.

---

[7] The "civil rights" exception in § 29-20-205(b) applies to governmental entities, not employees. *Fann v. City of Fairview*, 905 S.W.2d 167, 174 (Tenn. Ct. App. 1994).

13

The Court finds that concerns of judicial economy are not adversely affected by allowing Plaintiff's state law claims to be heard in state court. Therefore, Plaintiffs' negligence claims against the individual Defendants are DISMISSED without prejudice to being refiled in state court.

## MOTION TO STAY DISCOVERY

Defendants' Motion to Stay Discovery (Docket No. 7) is DENIED as moot.

## CONCLUSION

For all these reasons, the Motion to Dismiss Individual Defendants (Docket No. 5) is GRANTED in part and DENIED in part; Defendants' Motion to Stay Discovery (Docket No. 7) is DENIED; the Motion to Dismiss Metropolitan Board of Public Education (Docket No. 8) is GRANTED; and the Motion to Dismiss the Metropolitan Government (Docket No. 10) is GRANTED in part and DENIED in part.

All claims against the Metropolitan Board of Public Education and the Metro Public Schools are DISMISSED. All claims against the individual Defendants in their official capacities are DISMISSED. All negligence claims and failure to train claims against Defendant Metropolitan Government are DISMISSED, and all constitutional claims brought by Plaintiffs William Heyne and Robin Heyne are DISMISSED. In addition, all substantive due process claims against all Defendants are DISMISSED, and all negligence claims against the individual Defendants are DISMISSED without prejudice.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

14

15